**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ANTONIA HAYES,**

        **Plaintiff,**

-vs-                                                     **Case No. 6:04-cv-1681-Orl-KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

## ORDER

This cause came on for consideration on the Complaint filed by Antonia A. Hayes seeking review of the partially favorable final decision of the Commissioner of Social Security regarding her claim for social security benefits. Doc. No. 1. The Commissioner answered the Complaint and filed a certified copy of the transcript of the proceedings before the Social Security Administration ("SSA"). Doc. No. 10. The parties consented to the exercise of jurisdiction by a United States Magistrate Judge for resolution of all further proceedings in this case and the case was referred to me. Doc. Nos. 12, 13. The parties have filed their respective memoranda of law, and the case is now ripe for consideration. Doc. Nos. 16, 18.

**I.    PROCEDURAL HISTORY.**

On December 13, 1999, Hayes filed a claim for disability benefits under the Federal Old Age, Survivors and Disability Insurance Program ("OASDI"), 42 U.S.C. § 401, *et seq.*, and supplemental security income benefits under the Supplemental Security for the Aged, Blind and Disabled Program ("SSI"), 42 U.S.C. § 1381, *et seq.*, (collectively, the "Act"), alleging disability

beginning August 30, 1999. R. 92-94. Her applications were denied initially and on reconsideration. R. 84-85, 89-90.

Hayes requested review by an administrative law judge ("ALJ"), who held a hearing on June 13, 2001. Hayes, who was represented by an attorney, testified at the hearing. R. 30-67.

After considering the testimony and other evidence, the ALJ determined that Hayes was insured under OASDI from the date of the alleged onset of her disability through the date of the ALJ's decision. The ALJ concluded that Hayes had not performed substantial gainful activity since August 30, 1999, the alleged onset date of disability. R. 27.

The ALJ found that Hayes had degenerative disc disease of the lumbar spine following failed back surgery, and cervical pain with headaches, which were severe impairments. He found that Hayes did not have a severe mental impairment. R. 25.

The ALJ found that Hayes's condition met the criteria of section 1.05C of the listing of impairments in the SSA regulations, dealing with vertebrogenic disorders, beginning on August 30, 1999.[1] He based this conclusion on evidence that Hayes had a herniated disc with pain, muscle spasm, significant limitation of motion of her lumbar spine, as well a radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss. R. 25.

---

[1] "[A]s of February 19, 2002, Listing 1.05 . . . was deleted and replaced by new Listing 1.04." *Acevedo v. Barnhart*, No. CIV.A. 01-4952, 2002 WL 1870460, at *2 n.4 (E.D. Pa. Aug. 13, 2002) (citing 66 Fed Reg. 58010, 58017-18 (Nov. 19, 2001); 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.04 (2002)). "When the regulations were changed, the Social Security Administration stated that, for claims . . . in which the Commissioner has made a final decision and the claim was pending judicial review in Federal court, it expected that 'the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision.'" *Id.* (citing 66 Fed. Reg. 58011(Nov. 19, 2001)). The ALJ's decision in the instant case was issued on August 30, 2001, and it became the final decision of the Commissioner when the Appeals Council declined to review it. *See Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998).

The ALJ further concluded that Hayes's condition medically improved such that she no longer met listing 1.05C as of January 11, 2001.  He based this conclusion on evidence that, after back surgery, Hayes was no longer using a cane and had less tenderness in the sacroiliac joint area. R. 25.

The ALJ determined that on and after January 11, 2001, Hayes had the residual functional capacity (RFC) to perform a full range of sedentary work, including the ability to sit for up to six hours in a eight-hour workday, walk or stand up to two hours per day, and occasionally lift up to ten pounds.  R. 25-26.  The ALJ noted that despite the diagnosis of carpal tunnel syndrome on the left, there was no indication that Hayes did not have full use of her hands.  R. 26.

In reaching this RFC determination, the ALJ acknowledged that Hayes continued to have pain in her neck with headaches at time, as well as back and leg pain.  R. 27.  However, he found that Hayes's testimony about the limitations arising from her impairments was not entirely credible.  R. 26.  The ALJ noted inconsistencies between Hayes's testimony and the record. Specifically, he found that her testimony that she needed to use a case and that she did not drive was inconsistent with a note in her medical records that she did not need a cane and with the fact that she drove to the hearing.  R. 26.  The ALJ observed that Hayes's alleged problems with concentration were not documented in the record, and that she was able to help her children with their homework.  R. 26-27.

The ALJ concluded that Hayes was unable to perform her past relevant work with this RFC.  He relied upon the Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. § 404, Subpt. P, App. 2, to conclude that there was work available in the national economy that Hayes could have

performed on and after January 11, 2001. Therefore, he concluded that Hayes was disabled from August 30, 1999 through January 10, 2001, but not thereafter. R. 29.

Hayes sought review of the determination that she was not disabled after January 10, 2001. R. 13. On September 22, 2004, the Appeals Council denied her request for review. R. 5-6A. Hayes timely filed her complaint in this Court seeking review of the Commissioner's decision denying her application for disability as of January 11, 2001. Doc. No. 1.

## II. JURISDICTION.

Because the Commissioner issued a final decision on Hayes's application, the Court has jurisdiction pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).

## III. STATEMENT OF FACTS.

### A. *Hayes's Testimony.*

Hayes was born on November 24, 1971. R. 34. She is right handed. R. 34. She graduated from high school and attended some classes at a community college. R. 35.

She previously worked in fast food restaurants. She had been a restaurant manager from 1994 until she stopped working in September 1998. R. 36-37. Before that, she worked at a greenhouse nursery potting plants. R. 37. She had also been a census taker. R. 38.

Hayes was injured in a car accident in September 1998. R. 38, 42, 51-52. Thereafter, she attempted a vocational rehabilitation course, but sitting for long periods was too painful. R. 38. She had had spinal fusion surgery on her back. R. 42-43.

At the time of the hearing, Hayes testified that she experienced bad headaches with pain radiating from her neck about three times a week. She sometimes would become dizzy and have

temporarily blurred vision. R. 39, 41, 52. She also had muscle spasms extending into her hands. R. 39, 52. When she experienced severe headaches, she needed to lie down until the pain passed. R. 53. She had neck pain every day, which she described as moderate to severe. R. 62.

She also had pain in her hands that could come and go, which she described as moderate in severity. R. 54, 62. Sometimes her hands would become numb, it was difficult to bend her wrists, and her fingers would "lock up." Her hands would also shake at times. R. 39, 53-54. She wore a brace on her left wrist all of the time and on her right wrist when it caused her pain. R. 50-51.

Despite back surgery, she also had lower back pain radiating to her legs that made it difficult for her to walk. R. 39, 53, 57-58. She described the pain as moderate to severe. R. 61. After her back surgery, she had fallen on several occasions. R. 57. Her left leg was weaker than her right leg. R. 58.

Before her back surgery, she was depressed and had mood swings and temporary loss of memory. R. 55. As of the date of the hearing, Hayes testified that she had difficulty concentrating and was forgetful. R. 59. She still had crying episodes and a short temper on occasion. R. 63.

The pain was continuous. R. 40. Pain medication alleviated the pain somewhat but did not totally relieve it. *Id*. Repetitive motion, such as vacuuming or sweeping, exacerbated the pain. Standing for too long also increased the pain. *Id*. Typing on a computer was difficult for her. R. 60-61.

Hayes estimated that she could stand for twenty to twenty-five minutes, then her legs would become weak and painful. She could walk about fifty to one hundred feet. R. 43-44. She could sit twenty-five to thirty minutes. R. 45. She needed to change positions frequently to

alleviate pain. R. 43. She could lift but not carry a gallon of milk. R. 45-46. She occasionally dropped things when her hands gave out. R. 61.

Driving a car hurt her wrist. R. 46. She could feed herself, but needed to rest occasionally when using a spoon. R. 47. She could dress herself, but she had difficulty styling her hair. *Id*. Sometimes she had difficulty opening the car door. *Id.*

On an average day, Hayes was generally lightheaded when she awoke. She would fix breakfast for her children and drive them to school. When she returned home, she would make the bed. Then, she generally needed to rest, use heating pads and pillows between her legs. R. 48. Her family took care of most of the household chores. R. 49. During the day, Hayes would watch television. Reading was difficult because bending her neck down bothered her and holding the book up bothered her wrist. After the children came home from school, Hayes would help them with their homework. *Id*. She had started going to church but sat in the back so that she could stand up and move her legs when necessary. R. 50.

  B. *Medical Evidence.*

    1. <u>Medical Evidence Before January 11, 2001</u>.

Rahn Shaw, M.D., treated Hayes from September 1998, through August 1999. R. 239-51. His treatment notes reflect that Hayes complained of dizziness and back pain radiating to her right leg. R. 250-51.

On September 21, 1998, Hayes presented at the Complete Wellness Medical Center of Altamonte Springs. R. 218. She complained of severe neck and lower back pain radiating into both arms and down her left leg after being involved in a car accident. She also had headaches and

-6-

dull pain in her right arm and leg, with numbness and "pins and needles" in her left arm. *Id*. Upon examination the next day, R.J. Chambers, Jr., M.D. observed spasms and tenderness in the paravertebral muscles of her spine. R. 213. She also had acute tenderness at the lumbosacral junction and at the sacroiliac joints on both sides. R. 217. Her cervical and lumbar range of motion ("ROM") was restricted by 50%. She also had swelling and pain in her neck and shoulder muscles. She had acute tenderness at the cervical occipital junction and in the anterior cervical muscles on both sides. *Id*. Testing was positive for neck pain radiating through her entire spine and to her shoulder and causing headache pain. *Id*. Sensation was also decreased in her left upper and lower extremities. *Id*. Dr. Chambers' initial impression was cervical and lumbar strain/sprain with radiculopathy. He opined that Hayes could not work at that time. R. 212-13.

Subsequent treatment notes reflect that medication and other treatment were not alleviating Hayes's pain. R. 199-201, 203, 208-10. On September 28, 1998, she reported that she was suffering dizziness and blurred vision with her headaches, and that she fell down the previous evening. R. 208. These became recurring problems. R. 203. An x-ray taken of her lumbar spine on September 28, 1998, revealed subtle narrowing at L5-S1 with lumbar muscle spasm. R. 207. An x-ray of the cervical spine taken on the same date showed cervical muscle spasm and loss of curvature of the cervical spine (cervical lordosis). R. 193, 204-05.

An MRI of the lumbar spine taken on October 6, 1998, revealed a left paracentral herniated disc at L5-S1. R. 197. During an examination on October 7, 1998, Dr. Chambers observed that Hayes had significant range of motion limitations. R. 196. Thereafter, she reported that her headaches and associated dizziness, blurred vision, and nausea, pain and range of motion

restrictions continued. R. 179-86, 188, 191-92, 194. Medication and other treatment eventually alleviated her headache pain somewhat, but not her back and neck pain. R. 164-67, 172-73, 175-78. She continued to have breakthrough episodes of severe headaches. R. 170-71.

Bruce R. Hoffen, M.D., a neurologist, examined Hayes on December 4, 1998. At that time, Hayes complained of persistent headaches, dizziness, nausea and diffuse neck and lower back pain. The pain radiated into both arms and into her legs with a pins and needles sensation in both legs from time to time. Upon examination, Dr. Hoffen observed tenderness and muscle spasms with limitation on range of motion. Hayes's gait was normal. Dr. Hoffen observed that an MRI of Hayes's cervical spine was unremarkable but that the MRI of the lumbosacral spine revealed a herniated disc at L5-S1 that was indenting the thecal sac. His assessment was cervical and lumbar myofascial pain and a tension type headache. R. 162-63.

Thereafter, Dr. Chambers and Divya Thai, M.D., another physician at the Complete Wellness Medical Center, continued to treat Hayes. On December 11, 1998, Hayes reported that she had significant improvement. R. 158. However, later in the month she reported that she was again experiencing pain and restriction in motion. R. 157. These complaints continued through subsequent treatment at the Complete Wellness Medical Center. R. 154-56.

Dr. Hoffen examined Hayes again on January 9, 1999. At that time, Hayes complained of neck and low back pain with burning pain across her back and extending down her legs. A straight-leg raising test was positive for pain, and Dr. Hoffen detected cervical paraspinal spasm. His impression was cervical myofascial pain, bilateral lumbosacral radiculopathy, and a tension type headache. R. 153.

William Y. Lu, M.D., examined Hayes on January 12, 1999. He opined that the bulging disc could contribute to her back pain but not to her leg pain. R. 248-49.

In continued treatment by Dr. Chambers, Hayes reported continuation of her previous symptoms. R. 152. Dr. Chambers confirmed on examination that Hayes's range of motion was limited. R. 150-51. On January 19, 1999, Dr. Chambers wrote in his final examination report that Hayes had reached maximum medical improvement ("MMI"). He observed that she needed to change positions between standing and sitting every ten to fifteen minutes. She rated her low back pain as eight to nine on a scale in which ten was the most severe pain. She rated her neck pain as six on the ten scale. She also had nauseating headaches two to three times a week that she rated seven on the ten scale. Examination revealed that her cervical and lumbar range of motion remained limited. R. 145-47. Dr. Chambers opined that Hayes could not return to her previous work as a restaurant manager. He indicated that she should be retrained for a more sedentary job with the ability to alternate positions. R. 148.

From October 1998, through January 15, 1999, Hayes also had physical therapy. 216-36. In a final report regarding this treatment, physical therapist Julie Weng wrote that Hayes had improved in her ability to sit and stand, and that she could get in and out of a car and climb stairs with ease. R. 221. Her range of motion had improved, but was still limited. R. 219-21.

On March 29, 1999, Kwang Uk Chang, M.D., examined Hayes. Dr. Chang noted some limitation on range of motion in Hayes's back, and a straight-leg raising test was positive for pain on the left leg. Dr. Chang recommended epidural injections. He suggested that Hayes avoid any kind of repetitive bending and no lifting over twenty-five pounds. R. 243-44.

Timothy S. Smyth, M.D., examined Hayes on April 7, 1999. Hayes reported severe low back pain, bilateral leg pain, and shoulder and left arm pain. Pain increased with prolonged sitting or standing. Dr. Smyth observed that Hayes walked with an antalgic gait. Her range of motion was limited, and she had pain on palpation throughout her spinal area. His assessment was low back pain, bilateral leg pain, a lumbar herniated disc and facet arthropathy. He treated Hayes with epidural steroid injections. R. 237-38.

Francisco E. Rosillo, M.D., examined Hayes on February 21, 2000. She still complained of constant pain radiating down her left leg. She used a cane for support because she had fallen when walking. Walking, sitting, standing for long periods, and bending was painful. She also had bladder incontinence. Additionally, she had neck pain radiating to her left shoulder with paresthesia of her arm to her fingers and loss of strength in her left hand. R. 252. Upon examination, Dr. Rosillo noted limited range of motion in Hayes's cervical and lumbar spine and some limitation in strength in her legs. His impression was chronic low back pain due to a degenerative intervertebral disk and chronic neck pain with muscle spasm. R. 254.

On March 10, 2000, Robert S. Roberts, M.D., interpreted a lumbar discogram as being "markedly positive for L5/S1 recreating her low back/left leg pain." R. 271; *see also* R. 294. Hayes was admitted to Orlando Regional Healthcare Center on April 11, 2000, for a diskectomy with fusion. R. 264-65. Dr. Roberts and Stephen C. Huber, M.D., performed the surgery. R. 260-63. Immediately after the surgery, Hayes was walking with use of a lumbosacral corset and a walker. Her leg and back pain had improved. R. 258.

On March 20, 2000, David Z. Kitay, M.D., prepared an RFC assessment based on a review of Hayes's records.  Dr. Kitay opined that Hayes could occasionally lift twenty pounds and frequently lift ten pounds.  She could sit, stand or walk about six hours a day.  She would have occasional limitations in the ability to climb, stoop and crouch.  R. 284-91.

In August 2000, Hayes began counseling at Lakeside Alternatives.  She reported feeling depressed with decreased energy, sad mood, loss of motivation and social isolation with difficulty concentrating and staying asleep.  She also had crying episodes.  R. 310.  Najib Kirmani, M.D., noted on examination that Hayes's mood was depressed and her affect restricted, but that she was oriented and her memory was intact.  His diagnosis was major depression with a global assessment of functioning ("GAF") of 45.[2]  R. 310-11.  She was treated with counseling and medication.  R. 300-03.  As of October 2000, Hayes's GAF score was 50. R.  300.

Dr. Roberts continued to treat Hayes following her surgery.  On August 22, 2000, his treatment notes reflects that Hayes was making slow progress and still had back pain and occasional leg pain with limitation of range of motion in her back.  She also continued to have neck pain radiating into her left arm with limitation on range of motion.  She had a positive Phalen's test[3] in the left wrist with decreased grip strength. R. 292-93.  On September 5, 2000, Dr.

---

[2] The GAF scale is used to report an individual's overall level of functioning.  A rating of 41-50 reflects:

> Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

HAROLD I. KAPLAN, M.D. & BENJAMIN J. SADOCK, M.D., SYNOPSIS OF PSYCHIATRY 299 (8th ed. 1998).

[3] "The reproduction of the symptoms of carpal tunnel syndrome by hyperflexing the wrist." *Casher v. Halter*, No. Civ.A. 00-0110-AH-L, 2001 WL 394921, at *5 n.4 (S.D. Ala., Mar. 29, 2001).

Roberts completed a questionnaire in which he indicated that Hayes was unable to bend, stoop, lift, carry, or stand or walk for prolonged periods. He opined that she was temporarily totally disabled. R. 295-96.

On September 19, 2000, a CT of Hayes's lumbar spine revealed findings consistent with impingement of the left L5 nerve root with clinical features of radiculopathy. R. 297.

On November 16, 2000, Dr. Roberts wrote that Hayes was still walking with a cane because of right leg pain, and he advised her to continue to use the cane as needed ("PRN"). However, she had no motor weakness. R. 313.

On December 14, 2000, Dr. Robert's wrote as follows:

> Returns 7 ½ months post L5/S1 discectomy/fusion. Complains of pain in area of SI joints and she's quite tender over both. Also has pain on lateral bending and extension to both sides. Neurologic exam is normal. X-rays show further consolidation at fusion site. Today I injected both SI joints w/1cc Celestone/2cc Marcaine under careful sterile technique. Also advised moist heat applications/continued use of L/S corset; renewed Ultram. Recheck 4 wks.

R. 313.

    2.    <u>Medical Records On and After January 11, 2001</u>.

On January 11, 2001, Dr. Roberts examined Hayes and wrote as follows:

> Returns 8 ½ months post L5-S1 discectomy/fusion doing better. She's no longer using a cane though still has slight lurch when she walks. Has less tenderness in SI joint area though that's still where most of her pain is coming from. Renewed Ultram; recheck 4 wks. when lateral L5/S1 x-ray should be taken prior to being seen.

R. 313.

On February 13, 2001, Dr. Roberts opined that Hayes was neurologically intact. She still had limitation in range of motion and tenderness over both SI joints, but x-rays appeared to show solid hearing of the spinal fusion. *Id.* His last treatment note, dated March 22, 2001, reflects that Hayes was still having neck and low back pain radiating down her left arm with tingling in her left hand. Cervical and lumbar range of motion was limited. Dr. Roberts prescribed a splint for Hayes's left wrist. He also discussed carpal tunnel release surgery, but Hayes indicated that she was not interested in further surgery. R. 312.

On June 24, 2002, V. Stone, M.D., prepared an RFC assessment based on a review of Hayes's records. Dr. Stone opined that Hayes could occasionally lift twenty pounds and frequently lift ten pounds. She could sit, stand or walk about six hours a day. She would have occasional limitations in the ability to climb, stoop and crouch. R. 276-83.

## IV.     STATUTORY AND REGULATORY FRAMEWORK.

A claimant's disability benefits may be terminated upon a showing of the following: (1) a medical improvement in her impairment or combination of impairments; (2) related to the ability to do work; (3) that enables her to engage in substantial gainful activity. 42 U.S.C. § 423(f); *Williams v. Apfel*, 73 F. Supp. 2d 1325, 1337 (M.D. Fla. 1999). The SSA regulations establish an eight-step evaluation process for making this determination. *See* 20 C.F.R. § 404.1594(f). The ALJ must determine (1) whether the claimant is engaging in substantial gainful activity; (2) whether the claimant has an impairment or combination of impairments that meet or medically equal an impairment on the Listing of Impairments; (3) whether there has been medical improvement; (4) if there has been medical improvement, whether it is related to a claimant's

ability to work; (5) if there has been no medical improvement, whether any of the exceptions enumerated in 20 C.F.R. § 404.1594(d) and (e) apply; (6) if none of the exceptions apply and the medical improvement is related to a claimant's ability to do work, whether the claimant's impairment or combination of impairments is severe; (7) if the impairments are severe, whether the claimant can do her past relevant work; and (8) if the claimant cannot do past relevant work, whether the claimant can nevertheless do other work. *Id*.

To determine whether there has been medical improvement in the claimant's condition, the fact finder must compare the medical evidence of the claimant's condition supporting the most recent favorable medical decision that she was disabled with the medical evidence of the claimant's condition after last date on which it was determined that she was disabled. *See* 20 C.F.R. § 404.1594(b)(7); *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984). This comparison point is called the comparison point decision (CPD) date. *Williams*, 73 F. Supp. 2d at 1330 n.3.

## V. STANDARD OF REVIEW.

This Court's review of a final decision issued by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *McDaniel v.Bowen*, 800 F.2d 1026, 1029-30 (11th Cir. 1986). While a great deal of deference is paid to the ALJ's factual findings, "[n]o similar presumption of validity attaches to the [ALJ's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

The Court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the SSA's decision. *Id*. at 1000. Even if the Court finds that the evidence weighs against the SSA's decision, it must affirm if the decision is supported by substantial evidence. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh the evidence or substitute its own judgment for that of the SSA. *Id*.

## VI. ANALYSIS.

Hayes raises essentially two arguments. First, she contends that her condition did not medically improve related to her ability to work as of January 11, 2001. She argues, alternatively, that if her condition did medically improve, the ALJ did not appropriately assess her credibility regarding the functional limitations resulting from pain. Furthermore, she submits that her nonexertional limitations required use of a vocational expert to determine whether there was work she could perform, rather than relying on the Grids. I address only the first argument, because I find it to be dispositive.

The ALJ determined that Hayes was disabled from August 30, 1999, through January 10, 2001, because she met listing 1.05C. Listing 1.05C provided, in pertinent part, as follows:

> C. Other vertebrogenic disorders (e.g., herniated nucleus pulposus, spinal stenosis) with the following persisting for at least three months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
>
> 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
>
> 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.05C (2001).

As of January 10, 2001, the last date that the ALJ determined Hayes was disabled, the medical evidence established that Hayes had a vertebrogenic disorder, specifically a herniated disc, for which she had had spinal fusion surgery which appeared to be healing well.  However, a CT scan revealed that after surgery she still had impingement of the left L5 nerve root with clinical features of radiculopathy.  With respect to subpart 1 of the listing, as of December 2000, Dr. Roberts reported that Hayes had pain in the area of the SI joints, and pain on lateral bending and extension to both sides.  With respect to subpart 2 of the listing, as of November 2000, Hayes walked using a cane as needed, but she had no motor weakness.  The question presented is whether her condition medically improved with respect to the findings relevant to listing 1.05C as of January 11, 2001.

There is no evidence that Hayes had any improvement in the underlying vertebrogenic disorders on and after January 10, 2001.  With respect to subpart 1 of the listing, Dr. Roberts wrote that Hayes still had pain in the SI joint area, although it had lessened somewhat.  As of February 13, 2001, she still had limitation in range of motion on extension and bending.  R. 313; *see also* 256 (Office of Disability Determinations, State of Florida, Passive Range of Motion of the Spine form setting forth the degrees of range of motion for the thoraco-lumbar spine).  With respect to subpart 2 of the listing, Dr. Roberts wrote that Hayes still walked with a slight lurch, although she did not use a cane.   Thus, the only difference between Hayes's condition before January 11, 2001, and on and after January 11, 2001, is that her pain lessened somewhat and that she walked with a

lurch but did not require a cane for balance.  Based on the examples of medical improvement in the SSA regulations, these changes are insufficient to establish medical improvement.

The SSA regulations provide the following example of assessment of medical improvement in the case of vertebrogenic disorders:

> Example 1:    You were awarded disability benefits due to a herniated nucleus pulposus.  At the time of our prior decision granting you benefits you had had a laminectomy.  Postoperatively, a myelogram still shows evidence of a persistent deficit in your lumbar spine.  You had pain in your back, and pain and burning sensation in your right foot and leg.  There were no muscle weakness or neurological changes and a modest decrease in motion in your back and leg.  When we reviewed your claim your treating physician reported that he had seen you regularly every 2 to 3 months for the past 2 years.  No further myelograms had been done, complaints of pain in the back and right leg continued especially on sitting or standing for more than a short period of time.  Your doctor further reported a moderately decreased range of motion in your back and right leg, but again no muscle atrophy or neurological changes were reported.  *Medical improvement has not occurred because there has been no decrease in the severity of your back impairment as shown by changes in symptoms, signs or laboratory findings.*

20 C.F.R. § 404.1594(b)(1)(emphasis added).

Tracking the language of this example, the evidence in the present case established that as of the date last disabled, Hayes had had spinal fusion surgery but, postoperatively, a CT scan of the lumbar spine showed that she still had nerve root impingement.  No further CT scans or other radiologic findings thereafter are contained in the record.  As of the date last disabled, Hayes had pain in the SI joints.  As of January 11, 2001, she still had pain in the SI joints.  As of the date last disabled, she had limitation of motion on lateral bending and extension.  After January 11, 2001, Hayes still had limitation of motion on lateral bending and extension.  Finally, as of the date last

-17-

disabled, she had no motor weakness and used a cane as needed to walk. As of January 11, 2001, she still had a slight lurch when walking, but she no longer used the cane. Because Hayes had used the cane only as needed before January 11, 2001, and she still was not stable when she walked as of January 11, 2001, there was no decrease in the severity of the subpart 2 aspects of the listing shown "by changes in symptoms, signs or laboratory findings." Accordingly, substantial evidence did not support the ALJ's decision that Hayes's condition had medically improved related to the ability to work as of January 11, 2001.

### VII.   CONCLUSION.

It is therefore **ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** for an award of benefits based upon the Commissioner's previous determination that Hayes was disabled. The Clerk of Court is directed to issue a judgment consistent with this Order and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on March 20, 2006.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties